UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MICHAEL G. CHRISTENSEN,

        Plaintiff,

  v.                                              Case No. 04-C-1136

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

---

## DECISION AND ORDER

---

This is an action for judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") to deny the plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). 42 U.S.C. § 402(e). For the reasons that follow, the decision of the Commissioner will be affirmed.

## BACKGROUND

Plaintiff Michael G. Christensen is a forty-seven-year-old man with past vocational experience as a welder-assembler, painter, and cleaner. He filed an application for DIB on September 15, 2003, alleging a disability that commenced on June 20, 2003. Specifically, the plaintiff contends that he is unable to work because of "cervical and lumbar injuries with neurological complications." (Tr. 52.) The Agency denied the plaintiff's application initially and upon reconsideration, and the plaintiff requested a hearing.

On July 27, 2004, Administrative Law Judge ("ALJ") Stanley M. Schwartz held a hearing at which the plaintiff (who was represented by counsel) testified. (Tr. at 12.) Plaintiff testified that he had an eleventh grade education and past relevant work experience as a welder, painter and construction worker. (Tr. 26-27.) He testified that he sustained a work related injury to the lumbar region of his back and was later diagnosed with degenerative disc disease. He states he eventually underwent lumbar surgery. (Tr. 28-29.) In September of 2003, plaintiff further injured his back when he fell down some stairs. He was diagnosed with a herniated disc in the cervical region of his spine and underwent surgical fusion in late November, 2003. Plaintiff testified that following the November 2003 surgery his condition became worse. He testified that the tremors or spasticity he experienced in his legs before the surgery became worse afterwards. (Tr. 32.) When he would stand or walk after the surgery, he testified he would shake a lot more. His arms and hands would go numb every morning when he woke up, and he would experience pain at the site of the fusion and a headache. (Tr. 32-33.) Plaintiff claimed this occurred "every day since September." (Tr. 33.)

Plaintiff testified he had recently had a pump installed in his abdomen that supplied medication directly to his spine. He denies that it has been effective and claims he asked his doctor to remove it, but was told it was permanent. As a result of the implanted pump, he testified his doctor told him he could not work more than two hours a day and that he could do no overhead work. (Tr. 33-34, 37.) In addition to the medication administered by the pump implanted in his abdomen, plaintiff testified that he took 500 milligrams of Percocet three times per day. (Tr. 36.)

Plaintiff testified he was able to take care of his personal hygiene needs, drive and take public transportation. (Tr. 34.) He testified that he had lost strength in his grip, but retained ability to perform fine motor skills such as pick a coin off a table and write with a pen. He was able to use

hand tools to some extent and had changed a spare tire on his car. (Tr. 33.) However, plaintiff claimed he was unable to walk a full block without resting and had to rest three or four times when walking the two blocks from his apartment to his attorney's office. He testified that he could stand only three-to-five minutes and that his lower back hurt when he sat. (Tr. 35-36.) Despite these limitations, he was able to mow the lawn (although it takes him a little longer), wash dishes and do his laundry. (Tr. 40.)

The earliest medical evidence submitted in support of plaintiff's claim consisted of an Emergency Department report from Aurora BayCare Medical Center where plaintiff was apparently seen on February 6, 2003, for low back pain. (Tr. 182.) Plaintiff stated he injured his back while shoveling snow two days earlier. He reported intermittent back pain for the past twelve years, but denied any surgery. When he failed to improve with pain medication, plaintiff was referred for physical therapy. The plan was to see plaintiff three times per week for three-to-four weeks for treatment to include nerve mobilization, muscle energy techniques, myofascial release, lumbar stabilization, and body mechanics with a goal of eliminating plaintiff's back pain. (Tr. 176.) Plaintiff failed to comply, however, and was discharged from physical therapy on March 31, 2003. (Tr. 172.)

The next series of reports are from the Brown County Mental Health Center where plaintiff was admitted for detoxification on August 25, 2003. Plaintiff admitted he was an alcoholic and reported he was a daily drinker for many years. (Tr. 127.) His longest period of sobriety was eight months following the death of his mother approximately two years earlier. (Tr. 133.) Plaintiff denied any current medical problems and was discharged the following day with a recommendation

3

that he attend Alcoholics Anonymous meetings and pursue intensive outpatient treatment for alcohol and drug abuse through the Brown County Human Services Department. (Tr. 128, 138.)

Plaintiff had a relapse and fell down the stairs while intoxicated the following month. On September 11, 2003 he was seen at the Emergency Department at Aurora BayCare complaining of back pain. (Tr. 166.) Although he complained of some numbness in the lower extremities bilaterally, X-rays of the cervical, thoracic and lumbar spine were negative for acute fractures or dislocations, and neurological testing was negative. Plaintiff was able to get up and walk around the emergency department without difficulty, and was ultimately transported to a crisis center because of suicidal ideation. (Tr. 166-67.)

On September 17, 2003, plaintiff made another visit to the emergency room for complaints of back pain, this time at St. Mary's Hospital. The emergency room doctor found no evidence of numbness, tingling, or focal neurologic signs, and observed that a February 2003 MRI showed multiple level disc bulges but no gross stenosis or protrusion. Neurologic examination showed straight leg raising positive at 45 degrees bilaterally. He had intact toe dorsiflexion and plantar flexion. Absent reflexes were noted in the ankles, and normal reflexes at the knees. An X-ray of the cervical spine was negative, as was the lumbar spine X-ray, except for degenerative joint disease. Plaintiff was given medications and multivitamins, and discharged for follow-up with his physician. (Tr. 140-41.)

In November of 2003, plaintiff returned to Aurora BayCare with complaints of back and lower extremity pain. He was seen on November 21, 2003, by Dr. Richard Harrison, a neurological surgeon. Dr. Harrison noted a positive Hoffman sign bilaterally in the upper extremities and substantial difficulty with tandem gait, and ordered an MRI of the cervical spine. (Tr. 187.) The

4

MRI showed a broad-based disc protrusion at C5-6 causing severe cord compression and myelopathy. On November 26, 2003, Dr. Harrison performed a disckectomy and autograft fusion procedure. (Tr. 148-49.) Following the surgery, Dr. Harrison noted that overall things were somewhat better, but that plaintiff had "substantial clonus in the lower extremities and increased tone." (Tr. 185.) In January, Dr. Harrison noted plaintiff had improved from his pre-operative condition overall, but that he had "substantial residual spasticity" and "sustained clonus in his ankle." (Tr. 231.) To address the clonus and spasticity, Dr. Harrison referred plaintiff to Dr. Danzhu Guo for a physiatry consultation. (Tr. 231.)

Dr. Guo prescribed Baclofen for control of plaintiff's spasticity, and after an initial intrathecal trial appeared successful, a Medtronic SynchroMed drug pump was surgically implanted on March 30, 2004. (Tr. 245-47.) By April 19, plaintiff was reporting "good relief of his lower extremity spasms." (Tr. 236.) Plaintiff was seen again by Dr. Guo on May 10, 2004, and complained of lower left quadrant abdominal pain since playing Frisbee over the weekend. However, he was "very happy with the results of the baclofen pump placement," and Dr. Guo noted "his gait has significantly improved." (Tr. 235.) When the pump was refilled on June 1, 2004, plaintiff reported he was "having good relief of his spasticity at the current dose" of baclofen. (Tr. 232.) On the same date, despite the plaintiff's improvements, Dr. Guo signed an evaluation noting that plaintiff was permanently incapacitated. (Tr. 234.)

With this evidence before him, the ALJ undertook the standard five-step inquiry set forth in 20 C.F.R. § 404.1520. That inquiry required the ALJ to evaluate, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner], *see* 20 C.F.R. § 404[.1520], App. 1;

5

> (4) whether the claimant can perform h[is] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). The ALJ found that while the plaintiff had made the required showings under criteria (1), (2), and (4), his medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404.1520, App. 1. (Tr. at 19.) The ALJ also found that the plaintiff retained the residual functional capacity (RFC) to perform the full range of sedentary work. (Tr. at 20.) Based on this RFC and plaintiff's vocational profile, the ALJ found that there was a significant number of jobs plaintiff could perform. Accordingly, the ALJ found that the plaintiff was not under a "disability," as defined in the Social Security Act, at any time through the date of his decision. (*Id.*) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review. (Tr. at 3.)

## ANALYSIS

In reviewing a decision of an ALJ on a claim for Social Security disability benefits, this court may not reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute its own judgment for that of the Commissioner of Social Security; rather, the court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") Despite the deference accorded to the ALJ, however, a reviewing court must not "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford*, 227 F.3d at 869. The Commissioner's decision cannot stand if

the ALJ fails to build a logical bridge from the evidence to his conclusion. *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir.2000). While the ALJ need not provide a "complete written evaluation of every piece of testimony and evidence," *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir.1995), his decision must reflect a fair assessment of evidence and be free of fatal gaps and contradictions. *Johnson v. Apfel*, 189 F.3d 561, 563 (7th Cir. 1999). Still, a reviewing court must "give the opinion a commonsensical reading rather than nitpicking at it." *Id.* at 564.

In this case, plaintiff contends that the ALJ erred in finding that plaintiff could ambulate effectively on a sustained basis; that his complaints of severe chronic pain were exaggerated and not entirely credible; that his daily activities included driving, visiting with friends, playing Frisbie, and performing various household chores on a regular basis; and that an implanted medication pump had significantly diminished the myelopathic spasticity and clonus condition interfering with his ability to ambulate effectively. Plaintiff claims that these findings are not supported by the record as a whole and are based upon select comments in various records that are taken out of context. (Pl.'s Br. at 2-3.) Plaintiff further contends that "the records and testimony incontrovertibly establish that the Plaintiff has a condition that meets or exceeds the criteria for the Blue Book Listing of Impairments, 11.08." (*Id.* at 5.) Based upon these asserted errors, plaintiff argues that the Commissioner's decision should be reversed or at least remanded for further proceedings.

Plaintiff misstates the ALJ's findings. The ALJ made no finding that plaintiff's daily activities included playing Frisbie. The ALJ only noted that plaintiff reported to his doctor on May 10, 2004, that he played Frisbee the previous weekend. (Tr. 17.) The findings the ALJ did make are supported by substantial evidence in the record. Plaintiff's Physical Activities Questionaire supports that ALJ's findings that plaintiff cooked, drove a car, and climbed the stairs to his second

7

floor apartment daily. Plaintiff also acknowledged that he cleaned house, did his laundry and watched his children (ages 8 and 12) weekly. (Tr. 96-99.)

The ALJ's finding that plaintiff's condition significantly improved following implantation of the baclofen pump is also supported by substantial evidence. Contrary to plaintiff's testimony at the hearing that he had no improvement from the baclofen pump and asked to have it removed, Dr. Guo's records reflect significant improvement after implantation of the pump. On April 5, 2004, Dr. Guo noted plaintiff "has been doing well. His gait has been managed fairly well and he denies any side effects. His gait has significantly improved since the pump was placed." (Tr. 239.) Although significant spasticity was reported in the lower extremities on April 12, 2004, (Tr. 238), the dose of baclofen was adjusted and on April 19, 2004, Dr. Guo noted no lower extremity spasticity and no ankle clonus. (Tr. 236.) On May 10, 2004, Dr. Guo noted that plaintiff "is very happy with the results from the baclofen pump placement. His gait is significantly improved since then." (Tr. 235.) Finally, on June 1, 2004, Dr. Guo noted that plaintiff "states he is having good relief of his spasticity at the current dose." (Tr. 232.)

Plaintiff's testimony denying such improvement also supports the ALJ's determination that "his subjective complaints are exaggerated and not entirely credible to the extent contended." (Tr. 17.) Also damaging to plaintiff's credibility was the fact that he claimed a disability onset date of June 2003, but offered no evidence of any significant impairment prior to November, at which time he underwent surgery for the cervical disc herniation. The medical records preceding the November surgery both from Aurora BayCare and the Brown County Mental Health Center undercut his veracity and provide further justification for the ALJ's credibility determination.

8

This evidence also supports the ALJ's finding that plaintiff was able to ambulate effectively. Under the regulations, "inability to ambulate effectively means an extreme limitation of the ability to walk." 20 C.F.R. Part 404, subpart P, Appendix 1, 1.00B(2)(b). It generally means "having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* Here, plaintiff reported that he did not use a cane, walker, crutches or assistive device. (Tr. 97.) He was able to drive and use public transportation. (Tr. 97, 34.) Although he testified he had difficulty walking the two blocks to his attorney's office, the ALJ clearly discounted this testimony based on his assessment of plaintiff's credibility and the reports of significant improvement in the medical records.

As to plaintiff's claim that his impairment meets or equals the criteria for a listed impairment, it should be noted that plaintiff bears the burden of proof on this issue. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If a claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 4, subpart P, Appendix 1 ("the listings"), he is presumed disabled and incapable of performing substantial gainful activity. 20 C.F.R. § 1520(d). Listing 11.08 covers "[s]pinal cord or nerve root lesions, due to any cause with disorganization of motor function as described in 11.04B." 20 C.F.R. § 404.1520, App. 1. The finding required to meet or equal the listed impairment is "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dextrous movements, or gait and station," *id.* at 11.04(B). Here, the ALJ's finding that plaintiff's gait significantly improved and there was no lower extremity spasticity and no ankle clonus following implantation of the baclofen pump preclude any finding of "significant and persistent disorganization of motor function in two

9

extremities." I conclude that substantial evidence supports the ALJ's finding that plaintiff's impairment "is not accompanied by findings of the requisite severity to meet or equal any of the impairments described in the Listing of Impairments set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1." (Tr. 16.)

Lastly, and belatedly, plaintiff argues in his reply brief that the ALJ erred in failing to consider Dr. Guo's opinion that he was completely incapacitated as of June 1, 2004. (Reply Br. at 1-2.) The Commissioner argues that having failed to assert this argument in his opening brief, plaintiff has waived any claim that the ALJ failed to properly credit Dr. Guo's opinion. *See Help at Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 753 n.2 (7th Cir. 2001) (argument not raised in opening brief is waived). I agree. But even if the argument was not waived, it is clear that the ALJ did consider Dr. Guo's medical findings and placed substantial weight upon them. The ALJ based his findings that plaintiff's condition significantly improved upon his review of Dr. Guo's records and his report that plaintiff's gait had significantly improved after implantation of the baclofen pump. What the ALJ apparently failed to address in his decision is the form Dr. Guo signed on June 1, 2004. But even this is not fatal.

The determination whether a claimant is disabled is reserved to the Commissioner. 20 C.F.R. § 1527(e)(1). A treating physician's opinion is given controlling weight only if it is well-supported by medically acceptable objective evidence and not inconsistent with the other substantial evidence of record. 20 C.F.R. § 1527(d)(2). Here, it is not entirely clear from the form Dr. Guo apparently signed what his opinion is. Dr. Guo signed an evaluation form that is almost totally blank. No limitations are noted, and other than the patient's name, the diagnosis (spasticity), and the date, the only other notation that appears on the form is the word "permanently", which is

10

handwritten in a space for the date on which the patient was to be reevaluated. The form language that precedes the reevaluation date reads: "He/She is totally incapacitated at this time." (Tr. 234.)

Even assuming the form is intended to express Dr. Guo's opinion that plaintiff is permanently disabled, there are no findings in the record that support such a conclusion. The section of the form in which the physician is to list the patient's limitations is completely blank, a fact which contravenes the notion that the plaintiff was disabled at all, much less permanently. A finding of permanent incapacity conflicts with the remainder of Dr. Guo's June 1 report, which states that the plaintiff was "having good relief of his spasticity at current dose." (Tr. at 234.) In light of this conflict, the alleged finding of permanent incapacity could properly be discounted by the ALJ. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (holding that ALJ may discount opinion of treating physician where it is internally inconsistent).

In sum, I conclude that substantial evidence supports the ALJ's finding the plaintiff's impairment did not meet or equal any of the impairments. While the plaintiff offered a more sobering assessment of his condition at the hearing, the ALJ found that his "allegations regarding his limitations [were] not totally credible" (Tr. at 19) because they conflicted with the medical evidence cited in the preceding paragraph and the plaintiff's own statements in a Physical Activities Questionnaire. (Tr. at 17.) This medical evidence is substantial enough to support the ALJ's conclusion. *See Skarbek*, 390 F.3d at 505 ("[A court should] affirm a credibility determination as long as the ALJ gives specific reasons that are supported by the record for his finding.").

Because the plaintiff's impairment did not meet or medically equal one of the impairments listed by the Commissioner in 20 C.F.R. § 404.1520, he could only be found disabled if he was incapable of performing work in the national economy. The plaintiff offers nothing to rebut the

ALJ's conclusion that he retained the residual functional capacity to perform a full range of sedentary work.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner of Social Security is hereby **AFFIRMED.**

Dated this 1st day of August, 2005.

   /s William C. Griesbach
William C. Griesbach
United States District Judge

12

Case 1:04-cv-01136-WCG   Filed 08/01/05   Page 12 of 12   Document 15